[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-13853
_____

D.C. Docket No. 1:14-cv-00747-ELR


REGINALD CARROLL,

Plaintiff - Appellee,

versus

ATA RETAIL SERVICES, INC.,

Defendant - Appellant,

DONNA HART,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(August 28, 2018)

Before TJOFLAT and JORDAN, Circuit Judges, and HUCK, [*] District Judge.

PER CURIAM:

Reginald Carroll worked for ATA Retail Services as a part-time merchandiser for approximately three months before he resigned. He worked exclusively with his supervisor, Donna Hart, who trained and supervised him. At trial, Mr. Carroll testified that Ms. Hart subjected him to pervasive sexual harassment—for example, by withdrawing an offer for a new route because he refused to have sex with her—during his employment and that ATA failed to pay him certain wages he was owed.

Following a three-day trial, the jury found that Mr. Carroll was subjected to sexual harassment by Ms. Hart in violation of Title VII, and that ATA failed to pay him wages owed under the Fair Labor Standards Act. The jury awarded Mr. Carroll $27,000 in damages on his adverse impact sexual harassment claim, $20 in damages on his wage claim, and $162,500 in punitive damages.

ATA now appeals, arguing that the district court erred in (1) denying its motion for summary judgment, (2) refusing to impose sanctions against Mr. Carroll for spoliating evidence, and (3) admitting several documents into evidence at trial. After reviewing the record, and with the benefit of oral argument, we

_____

[*] Honorable Paul C. Huck, United States District Judge for the Southern District of Florida, sitting by designation.

2

affirm.    Because we write for the parties, we assume their familiarity with the record and set out only what is necessary to explain our decision.

ATA seeks to appeal the district court's denial of summary judgment on Mr. Carroll's wage claim and adverse impact sexual harassment claims.    We do not, however, review the denial of summary judgment once a case has proceeded to trial.  *See Lind v. UPS*, 254 F.3d 1281, 1286 (11th Cir. 2001) ("[T]his Court will not review the pretrial denial of a motion for summary judgment after a full trial and judgment on the merits.").

Next, ATA contends that the district court should have imposed sanctions on Mr. Carroll because he traded in his cell phone (after he went to the EEOC and before he filed suit); failed to preserve his voicemail, text messages, and phone log; and provided the EEOC with a compilation containing only some of the emails that he had printed from his Comcast account.  Reviewing for abuse of discretion, *see Amlong & Amlong v. Denny's, Inc.*, 500 F.3d 1230, 1237–38 (11th Cir. 2007), we find no reversible error.  Following an evidentiary hearing, the district court found that Mr. Carroll did not act in bad faith and that there was no spoliation of emails, and those findings are not clearly erroneous.  *See Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1543 (11th Cir. 1993).    The district court alternatively concluded that, even if Mr. Carroll acted in bad faith, the other relevant factors did not warrant sanctions.  Finally, the district court said it would allow broad cross-

3

examination of Mr. Carroll as to why he did not preserve certain communications. Assessing all of the circumstances, there was no abuse of discretion.

Finally, ATA argues that the district court erred in admitting certain documents at trial. ATA's main attack is on the emails sent by Ms. Hart to Mr. Carroll from her personal Gmail account after his resignation. At the end of the day, we do not find the arguments for reversal persuasive. *See Millennium Partners, L.P. v. Colmar Storage, LLC*, 494 F.3d 1293, 1301 (11th Cir. 2007).

First, we do not agree with ATA that the absence of originals doomed Mr. Carroll's authentication of the emails. Mr. Carroll's testimony sufficed for authentication under Rule 901 (at least insofar as admissibility was concerned). *See United States v. Siddiqui*, 235 F.3d 1318, 1322 (11th Cir. 2000).

Second, some of the post-termination emails from Ms. Hart were not hearsay because, as Mr. Carroll's counsel indicated, they were not introduced for the truth of the matters asserted. *See* D.E. 97 at 26–27. In other words, they were not introduced to show that what Ms. Hart said in the emails was true (for example, that Ms. Hart had a certain bra size, that Ms. Hart had a certain number of orgasms one day, or that Ms. Hart intended to have a tryst with two black men). *See Macuba v. DeBoer*, 193 F.3d 1316, 1323–24 (11th Cir. 1999). To the extent that some of the emails were in fact introduced to prove the truth of the matters asserted, those relating to Ms. Hart's job duties prior to the end of her employment

4

on or about May 2, 2013 (such as Exhibits 9,  15, 28 and 29) were admissible under Rule 801(d)(2)(D).

Third, there is no blanket ban on the admission of post-termination evidence in a case like this one.  As the D.C. Circuit has explained, the "relevance of post-termination evidence in a Title VII case depends on the nature of the evidence, the purpose for which it is offered, and the context in which it arises."  *Bowie v. Maddox*, 642 F.3d 1122, 1134 (D.C. Cir. 2011).  ATA does not claim that the post-termination emails were irrelevant, but rather asserts that they had minimal probative value and should have been excluded under Rule 403 due to the danger of unfair prejudice.

Fourth, any error in the admission of the post-termination emails was harmless. *See* 28 U.S.C. § 2111. We acknowledge some doubts about the admissibility of the post-termination emails after both Mr. Carroll and Ms. Hart stopped working for ATA.  For example, Mr. Carroll could not use Ms. Hart's statements in the emails to demonstrate *his* state of mind under Rule 803(3). *See United States v. de la Cruz Suarez*, 601 F.3d 1202, 1216 (11th Cir. 2010).  And to the extent that the emails were offered for the truth of the matters asserted, Rule 801(d)(2)(D) did not apply to ones that were sent after Ms. Hart ended her employment with ATA.  But as to this last point, we note that, at the hearing on

ATA's motion in limine, ATA's counsel apparently did not advise the district court of the date when Ms. Hart stopped working for ATA.  *See* D.E. 97 at 44–60.

On the matter of whether some or all of the contested emails prejudiced ATA's substantial rights, a couple of them were not of a sexual or threatening nature.  We therefore do not believe that they could have caused any improper prejudice.  *See* Exhibit 15 (Ms. Hart asking Mr. Carroll on April 24 if he was going to service any more stores); Exhibit 28 (Ms. Hart telling Mr. Carroll on April 30 that she was servicing some stores and trying to "make it work").

As to the emails of a sexual and threatening nature, we cannot help but observe that, in evidentiary terms, this sexual harassment case is in many ways unique.  Mr. Carroll testified about the harassment inflicted on him by Ms. Hart, but ATA did not present any substantive evidence to contradict Mr. Carroll's version of events. Although ATA did try to attack Mr. Carroll's credibility, it did not offer any witnesses or exhibits which cast doubt on Mr. Carroll's narrative.  So the ultimate question is whether, in a case where virtually all of the substantive evidence concerning Ms. Hart's alleged harassment was on one side—Mr. Carroll's side—the admission of a number of post-termination emails of a sexual or threatening nature from Ms. Hart to Mr. Carroll warrants reversal and a new trial.  On balance, we conclude that the answer is no because the statements in those emails largely corroborated Mr. Carroll's testimony regarding Ms. Hart's

conduct *during his employment. See, e.g.*, D.E. 91 at 33, 55 (describing unwanted physical contact); *id.* at 32, 34, 38–39, 68, 70, 77, 81, 83–84 (describing inappropriate sexual comments and requests for sex). *Cf. Wolff v. Brown*, 128 F.3d 682, 686 n.5 (8th Cir. 1997) ("[O]ne post-termination memorandum concerning Wolff's conduct on the day he was terminated was not relevant to the decision to discharge and was somewhat prejudicial because it disclosed that hospital security had escorted him from the premises. However, given the evidence that Wolff had been loud, angry, and threatening to staff on other occasions, we agree with the [district] court that this memorandum did not prejudice [Wolff's] right to a fair trial.").

**AFFIRMED.**